**Joseph SCOTT and Bunia Scott, Plaintiffs,**

**v.**

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

United States District Court
S. D. New York.

June 4, 1965.

Walter & Tepper, Brooklyn, N. Y., for plaintiffs; Julian C. Tepper, Brooklyn, N. Y., of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for defendant; Edward L. Smith, New York City, of counsel.

FEINBERG, District Judge.

The key issue on this motion is the validity of a 1956 transfer of a small retail business by plaintiff Joseph Scott to his wife, plaintiff Bunia Scott. The transfer was first held invalid in 1956 by a district office of the Social Security Administration ("SSA").[1] Thereafter, in April 1958, an area office of SSA held that the first determination was incorrect and, as a result, social security benefits became payable to plaintiff Joseph Scott.[2]

---

1. Transcript of Record filed by SSA, pursuant to 49 Stat. 624, as amended, 42 U.S.C. § 405(g) (hereinafter cited as "Tr."), p. 84.

2. Tr. p. 87.

Some six years later, SSA again reversed itself and decreed, among other things, that everything it had paid to Joseph Scott from January 1, 1958 to October 1961 should be recouped.[3] The facts as to this vacillating performance with its economic impact on the people involved are set forth in greater detail below.

The procedural posture of the case is that plaintiffs have brought an action under 49 Stat. 624, as amended, 42 U.S.C. § 405(g) to review the final decision of the Secretary of Health, Education, and Welfare ("Secretary"). Plaintiffs have moved for judgment on the pleadings under Fed.R.Civ.P. 12(c). Defendant has requested the court to consider plaintiffs' motion for judgment on the pleadings as a motion for summary judgment under Rule 12(c) and it will be so considered.

Plaintiff Joseph Scott was the sole owner of a butcher shop in the Bronx since 1938,[4] and paid social security taxes for many years as a self-employed individual. The extent of the business is shown by Scott's net profit of $2,815.79[5] in operating the store in the year 1955. He reached his sixty-fifth birthday on October 3, 1954,[6] the statutory minimum age for receiving full old-age benefits under social security. In early 1956, he allegedly transferred his business to his wife, Bunia Scott, without consideration.[7]

In July 1956, Joseph Scott filed an application for old-age benefits. SSA first denied this application in September 1956. The basis of the denial was that "no valid transfer [in 1956] of your business to your wife was effected."[8] After additional evidence was submitted, SSA reversed itself in April 1958. SSA awarded Scott a lump sum of $2,319.30 for benefits from January 1956 through March 1958 and monthly payments of $85.90 effective from April 1958.[9] The basis of the new award to Scott was "that you validly transferred your business to your wife on January 1, 1956 and therefore you did not have any self-employment income in 1956 or 1957 and are entitled to receive benefits for that period."[10] As a recipient of old-age benefits, there was a limit on the yearly income Scott could earn without affecting his social security benefits, which limit would have been exceeded if the transfer were not held valid. In 1961, five years after the purported transfer, Joseph Scott reached the age of seventy-two thus becoming eligible to receive old-age benefits without regard to other income. In the same year, his wife, Bunia, reached the age of sixty-five and became eligible for full old-age benefits independently of her husband, based upon self-employment income derived after the store was transferred to her.[11] In January 1962, Bunia Scott filed an application for old-age benefits in which she frankly stated that she was transferring the business back to her husband, partly because he could now earn unlimited income without forfeiture of old-age benefits.[12] Another stated reason for the transfer was the advice of the doctor treating plaintiffs' mentally ill daughter that it would be better for the daughter if Mrs. Scott spent more time with her.[13]

As a result of Mrs. Scott's application, SSA again reconsidered the 1956 transfer. In October 1962, it declared that Mr. Scott had owned the business all along and that the 1956 transfer approved by SSA in April 1958 was now deemed invalid.[14] SSA held that amounts credited to Mrs. Scott's account were earned by Mr. Scott and must be recred-

---

3. Tr. p. 9.

4. Tr. p. 34.

5. Tr. p. 113.

6. Tr. p. 83.

7. There is a discrepancy in the record as to whether the transfer was effective in January or April 1956. Compare Tr. pp. 59–60, 136 with pp. 31, 168.

8. Tr. p. 84.

9. Tr. p. 87.

10. Ibid.

11. Tr. pp. 63–65.

12. Tr. p. 169.

13. Tr. pp. 165, 169.

14. Tr. p. 93.

ited to him.[15] As a result, Mrs. Scott was held ineligible to collect old-age benefits on her own social security payments and benefits awarded to her were to be given only as the wife of Joseph Scott and upon his earnings record. This decision was said to be based upon "additional evidence."[16] On appeal, a hearing examiner ruled that Joseph and Bunia Scott were partners and ordered appropriate adjustments.[17] The Appeals Council of SSA, on its own motion, reviewed the hearing examiner's decision. In March 1964, it held that there was no partnership since none was intended, but affirmed the examiner's nullification of the 1956 transfer. Since the original transfer was invalid, the Secretary ruled that (1) Joseph Scott had wrongfully received benefits before he reached age seventy-two, because all of Mrs. Scott's income, when reallocated to Mr. Scott, exceeded the limit on outside income and barred him from April 1958 through September 1961 from receiving old-age benefits; (2) the resulting overpayment could not be waived; and (3) plaintiff Bunia Scott, never having owned the business, did not qualify for old-age benefits independently of her husband, but was entitled to a wife's insurance benefits.[18] The practical result of all this was that "overpayments" of $4,066.80 [19] were to be recouped from Mr. Scott and consequently neither the then seventy-two year old Mr. Scott nor his then sixty-five year old wife received any social security benefits from March 1962 to May 1965.[20] It is this determination now under review here.

▮ There is a preliminary legal problem which may be dealt with summarily.

Plaintiffs argue in their brief that the Secretary is barred under an SSA regulation (20 C.F.R. 404.957) from questioning the validity of the 1956 transfer. This regulation restricts reopening of an initial or reconsidered determination for good cause to four years from the date of the ruling, with exceptions not here relevant. The Secretary has submitted an affidavit of Rose Glazer, a Reconsideration Reviewer with the New York Payment Center of SSA, asserting that the question of the validity of the transfer to Mrs. Scott was reopened no later than March 20, 1962, nineteen days less than the four years provided for in 20 C.F.R. 404.957. Counsel for plaintiffs concedes his inability to deny the truth of this affidavit. Therefore, I find that the Secretary reopened the case within the four year allowable period.

▮ The standard for review of a final determination of the Secretary is whether his decision is supported by "substantial evidence." "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." Rayex Corp. v. F.T.C., 317 F.2d 290, 292 (2d Cir. 1963); Celebrezze v. Bolas, 316 F.2d 498, 501 (8th Cir. 1963). While a reviewing court cannot substitute its judgment of the case on the merits for that of the Secretary, it is not required to abdicate its function of review.[21]

When SSA, in April 1958, upheld the validity of the 1956 transfer, it knew that Mr. Scott admitted opening the store on Mondays, Tuesdays and Fridays when business was slow.[22] SSA also knew that Mr. Scott spent about fifteen hours a week there [23] assisting his wife whenever

15. Ibid.

16. Ibid.

17. Tr. pp. 17–23.

18. Tr. pp. 2–9.

19. This figure has been conceded by the Secretary. See letter dated May 27, 1965 to the court from the United States Attorney.

20. Ibid.

21. That review of the Secretary is searching is revealed by the following: in cases reported in volumes 227–236 of Federal Supplement, the Secretary's decision was upheld 27 times and reversed or remanded on 47 occasions.

22. Tr. p. 61.

23. Ibid.

she needed help,[24] and occasionally waiting on customers.[25] SSA also had before it a bill of sale and a business certificate both filed with the appropriate county clerk,[26] income tax returns from 1955 and 1956 showing that Mrs. Scott declared herself as owner in the latter year,[27] and evidence that she placed orders with suppliers,[28] and that the business checking account was in her name.[29] The Scotts never denied lack of real consideration for the transfer. On this showing, the transfer was upheld. What, then, was the basis of reversal in 1964, said (in the first instance by the area director) to be based on "additional evidence"?[30]

Careful perusal of the record discloses that the principal new evidence before SSA was the retransfer in 1962, when Mrs. Scott was presumably eligible to receive her own old-age benefits, and the fact that Mr. Scott's health had not improved since 1956 when his poor health was given as one of the reasons for the transfer of his business to his wife.[31] However, the social security laws, like the tax laws, do not prohibit people from arranging their lives to come within their ambit. Stark v. Flemming, 283 F.2d 410 (9th Cir. 1960) (per curiam); Dunlap v. Ribicoff, 207 F.Supp. 511 (D.Kan.1962) (transfer of business from husband to wife); Brannon v. Ribicoff, 200 F.Supp. 697 (D.Mont.1961). Therefore, Mrs. Scott had a right to retransfer the business in 1962 in order to maximize benefits under the social security laws. And it is quite clear that it is actually the transfer in 1962 that, in fact, constitutes the bulk of the "additional evidence" allegedly throwing doubt on the 1956 transfer. SSA refers in its decision to "numerous discrepancies."[32] Thus, it points out that Mr. Scott's physical condition in 1962 was no better than in 1956, when poor health was given as one of the reasons for transfer to his wife and concludes that "it would not be likely that his condition would permit him to operate the store again at this time when he was also considerably older."[33] However, the effect of SSA's decision is to establish that Mr. Scott was operating the store in 1962. Moreover, this alleged "discrepancy" becomes less striking upon realization that in 1956 Mr. Scott had been recently warned by a doctor "to take it easy."[34] In 1962, he had obviously survived an additional six years, thus lessening the psychological impact of the medical scare given him many years before. SSA also points out that

> although Mrs. Scott indicated that beginning in January 1962, it was necessary for her to spend more time with her disabled daughter, she testified that her daughter's condition has markedly improved.[35]

A reading of the record discloses that the "improved" mentally ill daughter still requires constant supervision and "sends letters everywhere to ask for her eyes. She hasn't got her eyes, she claims, and other nonsense."[36]

24. Tr. p. 136. This statement is undated, but by its content it is clear that it was written before April 1958.

25. Tr. p. 143.

26. Tr. pp. 31, 171–77.

27. Tr. pp. 109–23.

28. Tr. pp. 137–42.

29. Tr. p. 61.

30. Tr. p. 93.

31. Counsel for the Secretary argues that the admission by Mr. Scott that he worked about fifteen hours per week in the store and opened the store three days a week support the determination that he performed "substantial services" and was "self-employed" between 1956 and 1961. This, in turn, casts doubt upon the validity of the 1956 transfer. Regulations 20 C.F.R. §§ 404.415(b) (5), 404.416, 404.416a (a) (2), 404.416a (b) do help to support the Secretary's position. However, all the information was possessed by SSA when, in April 1958, it upheld the validity of the transfer and the Secretary accepted this determination.

32. Tr. p. 7.

33. Ibid.

34. Tr. pp. 36, 184–85.

35. Tr. p. 7.

36. Tr. pp. 41, 42–43.

738

There was no appeal in 1958 within SSA from the determination validating the 1956 transfer. Presumably, SSA was then satisfied that the transfer was not a sham. The switch in its position six years later, with its serious economic impact upon two aged people and their disabled daughter, certainly raises equitable considerations. However, SSA technically (by some nineteen days) had the legal right to reconsider its determination. Nevertheless, its ultimate determination and findings must be supported by "substantial evidence." My review of the record persuades me that this standard has not been met.

Plaintiffs' motion for summary judgment is granted. So ordered.