**Morris SKALET**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare.**

Civ. A. No. 6596.

United States District Court
E. D. Tennessee, N. D.

July 31, 1969.

Elliott D. Adams, Lewis S. Howard, Knoxville, Tenn., for plaintiff.

Robert E. Simpson, U. S. Atty., W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Claimant brings this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Secretary of Health, Education and Welfare that he is not entitled to be paid retirement insurance benefits under the Social Security Act, 42 U:S.C. § 402. The decision of the Secretary was made final on February 11, 1969 when the Appeals Council refused to review the determination of the Hearing Examiner.

Claimant, sixty-eight years of age, operated his sole proprietor pawn shop business, Knox Jewelry and Loan Company, for twenty-seven years. He worked at least 48 hours a week, making loans on articles brought to the shop, ordering new merchandise, keeping records, and selling unredeemed and new goods. His wife worked in the store about 15 to 20 hours primarily as a sales clerk. Claimant testified that his son Victor had been a full-time employee in the six years prior to 1967; that he had taught him how to order new merchandise and to keep the books. In 1956, Victor made

about one-half the loans and ordered most new inventory.

Claimant reached age sixty-five in 1967, and on January 3 of that year he executed a bill of sale agreement which purported to transfer the business to his son, Victor, and his wife. The agreement stipulated that he was to remain with the enterprise as an employee to be paid $125.00 per month (the maximum income then allowable without deduction from social security retirement benefits) as compensation for his services and advice. In consideration of the sale, Victor and Mrs. Skalet signed notes payable to claimant, one in the amount of $835.20 due December 1, 1967, and a second for $14,500.00 payable on demand at 4% interest.

The Hearing Examiner determined that the sale insofar as it purported to transfer one-half interest to Mrs. Skalet was not valid for social security purposes and that the income which Mrs. Skalet received should be charged against claimant in calculating the amount of benefits which may be paid. The relevant parts of 42 U.S.C. § 403 provide the following:

"(b) Deductions, * * *, shall be made from any payment or payments under this subchapter * * * if for such month he is charged with excess earnings, under the provisions of subchapter (f) * * *.

"(f) (1) the Amount of an individual's excess earnings (as defined in paragraph (3)) shall be charged to months as follows: * * * no part of the excess earnings of an individual shall be charged to any month * * * (E) in which such individual did not engage in self-employment and did not render services for wages * * * of more than $140.

"(f) (4) (A) An individual will be presumed, with respect to any month, to have been engaged in self-employment in such month until it is shown to the satisfaction of the Secretary that such individual rendered no substantial services in such month with respect to any trade or business the net income

or loss of which is includible in computing * * * his net earnings or net loss from self-employment for any taxable year. * * * "

The relevant portion of 42 U.S.C. § 411 is as follows:

"(a) The term 'net earnings from self-employment' means the gross income, * * * derived by an individual from any trade or business carried on by such individual, less the deductions * * * attributable to such trade or business, plus his distributive share (whether or not distributed) of the ordinary net income or loss, * * * from any trade or business carried on by a partnership of which he is a member; * * * "

In cases of this nature the basic inquiry is whether the claimant is engaged in rendering substantial services with respect to a business which he carries on or a partnership of which he is a member. Since the hours claimant admittedly works would amount to substantial services, the precise question for the Court is whether the pawn shop is a business which claimant carries on and in which he shares profits and losses.

■ In determining the amount of income which is to be charged against retirement benefits, the Secretary may look to the *bona fides* of an alleged business transaction, especially if the transaction is among members of the same family. Poss v. Ribicoff, 289 F.2d 10 (C.A.2, 1961); Reynolds v. Gardner, 271 F.Supp. 676 (W.D.Va., 1966); Hellberg v. Celebrezze, 245 F.Supp. 390 (W.D.Mo., 1965).

■ A man may retire by transferring his business to family members and be eligible for social security even though his expressed motive was to avoid having income which would cause his benefits to be reduced. Reynolds v. Gardner, supra; Scott v. Celebrezze, 241 F.Supp. 733 (S.D. N.Y., 1965). The Secretary does not question that the transfer was actual and valid as far as the one-half received by Victor, but he does maintain that the one-half interest transfer to Mrs. Skalet

was spurious for purposes of its effect on social security benefits.

The Secretary must be affirmed if there is substantial evidence to support his findings and no erroneous legal standards were used. Osborne v. Cohen, 409 F.2d 37 (C.A.6, 1969); Whitt v. Gardner, 389 F.2d 906 (C.A.6, 1968).

Although the decisions in Reynolds v. Gardner, supra, and Hellberg v. Celebrezze, supra, held transfers invalid for social security purposes, in those cases the generally accepted statement of the dispositive issue was whether there was an "actual" sale or transfer. In the instant case the Secretary admits that the bill of sale of January 3, 1967 actually transferred half the business to claimant's son, but would refuse to give effect to the transfer to the joint transferee named in the same bill of sale. That document represented one transaction, and since it was unquestionably valid with respect to Victor, it should also be found valid as to Mrs. Skalet.

■ The facts on which the Secretary's contrary conclusion must primarily rely are the following: Changes in the bank account of Knox Jewelry to give Victor authority to sign checks in his name and to make it a partnership account were delayed until March 22 and June 14, respectively. Claimant continued to participate in the business as an employee whose position was protected by the sales agreement. Supplies and creditors were not notified of the change in ownership until April. Mrs. Skalet continued to work primarily as a sales clerk and does not appear to participate to any great extent in management decisions. There is no set schedule for payment of the principal on the demand note of $14,500.00. The family finances are the same as they would be if the transfer to Mrs. Skalet had not been made. The expressed intention of the transfer was to make claimant eligible to receive social security benefits. None of these factors are necessarily inconsistent with an actual transfer to Mrs. Skalet as well as to Victor. The delays in notification of the bank and others is explained by the fact that those technicalities were advised by the business accountant when they came to his attention; but compliance with those procedures might not seem to laymen necessary to the operation of the business.

The following indicia of transfer were completed before any claim was made to the Social Security Administration on the basis of the alleged transfer: the bill of sale transferred title and possession; Internal Revenue Service withholding statements were filed in the name of the new partnership for the first quarter of 1967; a state sales tax account was opened in the name of the partnership; new pawn tickets and business cards deleted reference to claimant and listed Victor as manager; the bank account was changed and creditors and others notified after some delay.

Consideration for the sale amounted to the entire book value of Knox Jewelry and Loan Company. The small note was paid off in 1967, and interest is being paid on the principal of the $14,500.00 note. The failure to have a set schedule for payment of the principal is not inconsistent with an actual debt between family members.

As between claimant and his wife, claimant has greatly reduced all participation in the business while Mrs. Skalet's hours and other participation have increased somewhat. The uncontradicted evidence is contrary to the Secretary's conclusion that claimant remained the "guiding light" of the firm; rather it shows that he exercises no managerial functions, and there is no evidence that he makes or attempts to influence business decisions. He has reduced his hours per week from about 48 to 24. Mrs. Skalet spends about 30 hours a week in the shop, about 10 more than prior to the sale. She states that she leaves most of the management decisions to Victor, but says she expects him to consult her on some questions. She does make some few loans and orders some jewelry. By contrast with those facts, in both the *Hellberg* and *Reynolds* cases the pur-

ported vendor continued to be the dominant figure in the business.

In light of the undisputed testimony that a good faith transfer was intended and the other evidence of transfer, the facts relied on by the Secretary do no more than raise a doubt, and do not constitute substantial evidence that the transfer was not actual.

Therefore, the Secretary's motion for summary judgment must be, and same hereby is, denied, and a like motion by the claimant is sustained. The Secretary is directed to award benefits in accordance with this opinion and the Act.