Frank CORREA, Plaintiff,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Defendant.

No. 79 Civ. 6167.

United States District Court,
S. D. New York.

Nov. 10, 1980.

Binder, Binder & Cooper, Patchogue,
N.Y., for plaintiff; David Cooper, New
York City, of counsel.

John S. Martin, Jr., U. S. Atty. S.D.N.Y.,
William J. Brennan, Asst. U. S. Atty.,
Frank V. Smith, Regional Atty., Barbara
Spivak, Asst. Regional Attorney, Dep't of
Health & Human Services, New York City,
for defendant.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Frank Correa commenced this
action pursuant to 42 U.S.C., section 405(g)
to review a final determination of the Sec-
retary of Health and Human Services
("Secretary") that his period of disability,
and his consequent entitlement to disability
insurance benefits, ended in January 1978.
Both Correa and the Secretary now move
under Rule 12(c) of the Federal Rules of
Civil Procedure for judgment on the plead-
ings. The issue is whether the Secretary's
determination that plaintiff's condition had
improved enough to warrant a finding that
he is no longer "disabled," as defined in the
Social Security Act,[1] is supported by "sub-
stantial evidence."[2]

In making this review, the Court con-
siders "(1) the objective medical facts; (2)
diagnoses or medical opinions based on such
facts; (3) subjective evidence of pain or
disability testified to by the claimant or
others; and (4) the claimant's educational

---

1. 42 U.S.C. §§ 423(d)(1)(A) & (d)(2)(A). *See
Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d
Cir. 1975). The basis for a finding of disability
is a claimant's "inability to engage in any sub-
stantial gainful activity by reason of any medi-
cally determinable ... mental impairment ...

which has lasted or can be expected to last for
a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A).

2. 42 U.S.C. § 405(g).

background, age and work experience."[3] The Court is bound to uphold the findings of the Secretary if they are supported by substantial evidence, which is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[4] The evidence " 'must do more than create a suspicion of the existence of the fact to be established' ";[5] thus, while the Court does not substitute its judgment for that of the Secretary, neither does it act as a "rubber stamp" of administrative determinations.[6] If it is found, in "scrutiniz[ing] the whole record ... [that] reliance is placed on one portion of the record in disregard of over–balancing evidence to the contrary, the court may then interfere with the Secretary's conclusion.' "[7]

Upon a word–by–word study of the administrative record, the Court does not have a settled conviction that substantial evidence in the record supports the finding below.[8] Indeed, the record itself suggests that the decision was based on "unfinished business."

■ Plaintiff is a thirty–one year old Vietnam War veteran who was discharged from the Marine Corps in 1970 because of his inability to get along with his superiors. After his discharge, and continuously up to the present, plaintiff has been receiving Veterans Administration ("VA") benefits for a nervous condition that, according to the VA, has rendered him 100% disabled.[9] Having worked as a welder for two years, plaintiff in 1975 quit that job instead of "being embarrassed because I could no longer work with my superiors."

■ Correa was originally awarded disability benefits by the Social Security Administration ("SSA") in January 1975 upon a diagnosis of "explosive personality" and "neurosis anxiety and depressive neurosis." He continued to receive these benefits until March 1978 when they were terminated by a decision essentially based upon a psychiatric examination conducted in December 1977 by Dr. Raymond Jarris, to whom plaintiff was referred by SSA. Upon a de novo review, for which plaintiff without the advice of counsel waived his right to appear in person, an administrative law judge ("ALJ"), relying heavily on the Jarris report, upheld this termination in June 1979. The ALJ's decision was affirmed in September 1979 by the SSA Appeals Council.

Throughout the past decade plaintiff has been hospitalized periodically because of his psychiatric disorders. For the period between the awarding of benefits and the examination by Dr. Jarris, plaintiff was hospitalized for fifty days in 1975 for "neurosis anxiety and depressi[on] with poor impulse control" and for eight days in January 1976 for "traumatic war neurosis, borderline schizophreni[a] [and] explosive personality." During this period, Correa was participating in an out–patient psychotherapy program five days a week. Records through 1976 consistently show diagnoses of schizophrenia and paranoia.

In late December 1977, plaintiff was examined by Dr. Jarris. Because the ALJ based his decision that plaintiff was no

---

**3.** *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978).

**4.** *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–217, 83 L.Ed. 127 (1938)).

**5.** *Scott v. Celebrezze*, 241 F.Supp. 733, 736 (S.D.N.Y. 1965) (Feinberg, J.) (quoting *Rayex Corp. v. F.T.C.*, 317 F.2d 290, 292 (2d Cir. 1963)).

**6.** *Cf. Martin v. Secretary of H.E.W.*, 492 F.Supp. 459, 461 (D. Wyo. 1980).

**7.** *Flores v. Department of H.E.W.*, 465 F.Supp. 317, 320 (S.D.N.Y. 1978) (quoting *Hofacker v.*

*Weinberger*, 382 F.Supp. 572, 576 (S.D.N.Y. 1974).

**8.** *Cf. United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed") (footnote omitted).

**9.** Determinations of the VA, or of any other governmental agency, are not binding on the Secretary. 20 C.F.R. § 404.1525.

longer disabled almost entirely on Dr. Jarris' report, that report is considered in some detail. Dr. Jarris noted, as had other doctors who have examined plaintiff over recent years, that he is "coherent and relevant" and verbalizes well. Moreover, he noted "that this man does not respond in a typically schizophrenic and paranoid–like manner." However, Dr. Jarris did not comment on plaintiff's ability to work or get along with others, failings that contributed to the initial award of disability benefits.

Indeed, Dr. Jarris' report raises more questions than it answers, for, noting that Correa's father suffered from epilepsy, the doctor indicated that "the nature of [Correa's] reaction pattern is not typically schizophrenic and clinically resembles an organic brain syndrome, possibly epileptic in nature, although no testing including neurology or EEG is available at this point. Although the diagnosis of explosive personality . . . with paranoid and depressive features is appropriate at this time, *it is felt that further investigation should be pursued with regard to possible organic and/or epileptic nature of his clinical picture*" (emphasis supplied). Dr. Jarris concluded by recognizing Correa's symptomatology but doubting its schizophrenic origin, and he noted that "[t]he patient . . . seems quite well motivated for further testing and clinical investigation as to the character of his symptomatology in order to arrive at the more effective basis in treatment."

Although this report impelled SSA to conclude that Correa was no longer disabled as of January 1978, plaintiff was once again hospitalized for over three weeks that very month. Dr. Sundar Collimuttam, who treated him, though doubting that plaintiff had actually attempted suicide as claimed, noted that he had " 'broken down' aagain [sic]" and said he "was placed on his *usual* anti–psychotic medication" (emphasis supplied). Plaintiff was once again hospitalized for five days in March 1979 with similar problems. Throughout the period after

Dr. Jarris' report, as before, he continued to participate in out–patient psychotherapy programs on a regular basis.

The ALJ either overlooked or failed to consider portions of the Jarris report concerning the possible organic or epileptic basis for Correa's symptoms, just as he ignored the subsequent three–week hospitalization in January 1978 which coincided with the time at which Correa is supposed to have become "no longer disabled." Significantly, Dr. Jarris made no finding as to plaintiff's work capacity. The ALJ focused instead on Dr. Jarris' findings of coherence, relevance, attentiveness, and full orientation. From this, the ALJ reached the determination not suggested in the Jarris report (or to be deduced from others), that "claimant no longer suffers from a severe mental disorder and is not restrictive provided that he stays on his medication and is employed in non–stressful situations. Consequently, the claimant does not have a severe condition, and may not be considered 'disabled.' "[10] No direct medical evidence supports that finding; it appears to be negated by plaintiff's subsequent hospitalization and out–patient treatment. Moreover, the ALJ found that Correa "suffers from chronic schizophrenia, *in remission*" (emphasis supplied), another conclusion not supported by the Jarris report or anything else in the record.

From the time Dr. Jarris reported his findings in February 1978 to the present, it does not appear that anyone has pursued his suggestion of investigating a possible organic or epileptic basis of plaintiff's symptomatology, even though, as the record shows, Correa has continued to manifest the same symptoms as before. In the circumstances, it is difficult to perceive the basis on which the ALJ determined that Correa's condition had changed from January 1975, when the SSA found he was disabled, and that he is now able to do certain kinds of work. The evidence, including the report furnished by the doctor engaged by the

---

10. As late as August 14, 1979, the director of the out–patient program Correa was in wrote that, despite being maintained on 400 milli-grams per day of Thorazine, it was unlikely Correa would be able to work in the near future. Record at 83.

Secretary to examine Correa, indicated that Correa's pathological symptoms were continuing and essentially unchanged in character from the time he initially received benefits in 1975 to the present. While it is recognized that here, upon the entire case, the burden of proof rests upon the plaintiff, nonetheless, having established in 1975, as Correa has, "an impairment disabling him . . . the burden of going forward with evidence devolves upon the Secretary who must then show that the claimant, given his age, education, work experience and physical shortcomings, possesses the capacity to perform alternate work."[11] The evidence in this record supporting the Secretary's final determination is, at best, sparse.

This Court is aware that it cannot reverse a determination of the Secretary simply because it disagrees with it. But this case involves something more. Here, the Secretary determined in 1975 that this disturbed war veteran merited disability benefits because his condition prevented him from obtaining work; three years later, with his overall condition basically the same, the Secretary reversed position. "The switch in its position . . . with its serious economic impact . . . certainly raises equitable considerations."[12] This Court is troubled that there has been no investigation into the basis for Correa's continued symptomatology despite the Jarris report's suggestion and also the clinical evidence of Correa's continued psychiatric condition. Although plaintiff was examined by Dr. Jarris on December 19, 1977, the doctor did not dictate his report (on the telephone) to the Department of Social Services until February 14, 1978. In the meantime, plaintiff had been hospitalized for three weeks. In the light of this circumstance alone, the suggested examination of plaintiff should have been made to obtain a definitive finding as to his condition. The record, as it has here been submitted, is inadequate to sustain the Secretary's finding; further medical evidence is necessary to discover the basis of plaintiff's disability and its current effect on his ability to engage in gainful activity.[13]

The decision of the Secretary is reversed and the action remanded for further proceedings not inconsistent with this opinion.

So ordered.

---

**11.** *Buzzeo v. Harris*, 486 F.Supp. 690, 692 (S.D. N.Y. 1980) (citing cases).

**12.** *Scott v. Celebrezze*, 241 F.Supp. 733, 738 (S.D.N.Y. 1965) (Feinberg, J.)

**13.** *Cf. Buzzeo v. Harris*, 486 F.Supp. 690, 694 (S.D.N.Y. 1980).