Leonardo LEYVA, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of
Health and Human Services,
Defendant.

No. 79 Civil 6231.

United States District Court,
S. D. New York.

May 29, 1981.

Ishmael Lahab, Harlem Legal Services, Inc., New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for defendant; Robert S. Groban, Jr., Asst. U. S. Atty., Frank V. Smith, III, Regional Atty., Region II, Linda Lee Walker, Asst. Regional Atty., Anthony Princi, Legal Asst., Dept. of Health and Human Services, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is an appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of the Secretary of Health and Human Services ("Secretary") that plaintiff Leonardo Leyva's period of disability ended as of January 1979, so that his benefits under the Social Security Act terminated in March 1979. The parties cross-move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The only issue is whether the Secretary's decision that plaintiff was no longer "disabled," as that term is defined in the Act,[1] is supported by "substantial evidence."[2]

■ In reviewing the administrative record, the Court neither substitutes its judgment for the Secretary's nor acts as a "rubber stamp."[3] Rather, it makes a searching inquiry to determine if the record contains " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[4] In doing so, the Court considers objective medical facts, diagnoses or medical opinions based thereon, subjective evidence of pain or disability, and the claimant's educational background, age, and work experience.[5] Although the ultimate burden of proof is with plaintiff, in a case like this one, where plaintiff has already established "an impairment disabling him ... the burden of going forward with evidence devolves upon the Secretary who must then show that the claimant, given his age, education, work experience and physical shortcomings, possesses the capacity to perform alternate work."[6]

■ After a word-by-word examination of the entire administrative record, the Court does not have a "settled conviction" that the determination of the Secretary is supported by substantial evidence, and accordingly the case is reversed and remanded to the Secretary for proceedings not inconsistent with this opinion.

Plaintiff is a forty-six year old immigrant from Cuba who, after he arrived in the United States in 1968, worked as a warehouse helper lifting boxes as heavy as fifty to sixty pounds. He first began feeling ill in 1975, when he started to miss work for days or weeks at a time, and finally in September 1977 he applied for disability benefits, complaining of diabetes and an arthritic back. At the time, he said he could no longer lift heavy objects or work around the house. His doctor, Manuel Perez, was of the view that Leyva could not do any work; he wrote that the plaintiff has "severe lumbo sacral pain, vertebrae protrude problems ... [and] cannot sit for very long and he is in terrible pain when he has to get up. He can't lift more than 3–5 lbs. He cannot bend. Climbing is difficult.

---

1. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(A). Plaintiff claims an entitlement to benefits under both Subchapter II, 42 U.S.C. §§ 401 et seq., and Subchapter XVI, 42 U.S.C. §§ 1381 et seq. Because the definition of "disability" is substantially the same for both, the case law under each subchapter is applicable to the other. E. g., Rivera v. Harris, 623 F.2d 212, 216 n.4 (2d Cir. 1980).

2. 42 U.S.C. § 405(g), 1383(c)(3).

3. Correa v. Secretary of Dep't of H. H. S., 501 F.Supp. 236, 237 (S.D.N.Y.1980); Martin v. Secretary of H. E. W., 492 F.Supp. 459, 461 (D.Wyo.1980).

4. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 21 L.Ed.2d 842 (1971) (quoting Consolidated Edison v. N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

5. Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

6. Buzzeo v. Harris, 486 F.Supp. 690, 692 (S.D. N.Y.1980). See Correa v. Secretary of Dep't of H. H. S., 501 F.Supp. 236, 239 (S.D.N.Y.1980).

Prognosis is poor. I think he will always have trouble. He also has hypertension [which with medication] was 140/90." On the basis of Leyva's application, Dr. Perez's letter, and an interviewer's observations that plaintiff could not sit still for any length of time and held his back while standing, the Social Security Administration granted benefits.

After a routine review of his continuing eligibility for disability benefits, Leyva's benefits were terminated effective March 1979 after a finding that his disability had ceased as of January 1979. After a hearing before an administrative law judge ("ALJ"), at which plaintiff appeared pro se, together with his godson, a State police officer, the decision to terminate was upheld in June 1979. This decision was affirmed in August 1979 by the Social Security Administration Appeals Council.

The original decision to terminate benefits was based in large measure on the report of Dr. Constantine Ladopoulos, to whom the Social Security Administration referred Leyva in January 1979. Dr. Ladopoulos found some arthritis of four to five years' duration present but no atrophy. He said that Leyva had the ability to walk two to three blocks, stand for a half hour, lift up to twenty pounds, and bend with pain. Blood pressure was 160/100. The doctor found tenderness in the lower lumbar area of the spine and back pain radiating down the right leg. The final diagnosis was hypertension and discogenic disease of the lumbar spine.

This report is significant not only because the Secretary relied so heavily on it but also because it does not on the whole contradict other medical evidence in the record nor is it inconsistent with plaintiff's own testimony before the ALJ; moreover, while Dr. Ladopoulos did not specifically venture an opinion as to plaintiff's capacity to work,[7] some of plaintiff's treating physicians, who found similar objective clinical findings, did. Their view was that he was not capable of working at his usual job.

Thus Dr. R. Sartnick of plaintiff's neighborhood medical and dental center wrote in February 1979 that, based on plaintiff's medical condition which he had followed since January 1978, he believed plaintiff was not "capable of working at his usual job." Dr. Luis Navarro, who treated plaintiff from February through May, 1979, was of the view that plaintiff could not do any work due to his diabetes, hypertension, and spinal problem, although he did not elaborate. Dr. John Moseley, who performed an x-ray examination of plaintiff at Dr. Ladopoulos' request in January 1979, made a diagnosis of minimal hypertrophic spondylosis in the lower lumbar spine; he did not venture an opinion on the consequences thereof.

The reports of all these physicians, taken with the report of Dr. Perez in 1977 which led to plaintiff's initial receipt of benefits, paint a rather consistent picture. Plaintiff suffers from diabetes and hypertension, both of which are apparently controlled by drugs although the objective evidence shows that the hypertension has deteriorated since 1977.[8] However, plaintiff's most severe problem is his back problem, which is indicated by both objective manifestations

---

7. This omission is striking. Where a plaintiff has established a prima facie case of entitlement to benefits and the Secretary relies on a medical expert, that expert should commit his professional opinion on whether plaintiff is capable of working. See Rossi v. Califano, 602 F.2d 55, 58 (3d Cir. 1979); Whitson v. Finch, 437 F.2d 728, 732 (6th Cir. 1971).

8. The Secretary argues that plaintiff's diabetes and hypertension cannot serve as a basis for a finding of disability because they are controllable by drugs and have not resulted in end-organ damage. In light of the Court's disposition of the case, it is unnecessary to pass on these arguments, though the Court notes that there has been criticism of the absolute requirement of end-organ damage as a prerequisite for a finding of disability because it is not synonymous with the statutory standard of ability to engage in substantial gainful employment. See Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979); Lewis v. Weinberger, 541 F.2d 417, 420 (4th Cir. 1976); Martin v. Secretary of H. E. W., 492 F.2d 905, 909 (4th Cir. 1974); Champion v. Califano, 440 F.Supp. 1014, 1017 (D.D.C. 1977); Badicheck v. Secretary of H. E. W., 374 F.Supp. 940 (E.D.N.Y.1974).

as well as subjective pain and verified by x-rays.

The ALJ, however, rejected plaintiff's claim of pain based on observation of plaintiff at the hearing and also upon consideration of plaintiff's daily activities. Thus, it is further necessary to consider those activities.

Leyva lives alone on the fifth floor of a walkup apartment building. He goes downstairs once a day to pick up the mail and, if necessary, shops at that time at a store a half block away. He does not go downstairs a second time on any given day unless necessary. He uses the subway when he must to visit some doctors, and he walks to the neighborhood health center, about six blocks away, but stops when he gets tired or his leg hurts. He has friends in his building with whom he socializes and who do favors for him. If there are family gatherings or he visits friends in New Jersey, he is always picked up and driven there in a car. Although he is able to do his own cooking, he is unable to clean his four-room apartment completely, and when he does do some cleaning he sits a while.

He wakes up each morning with severe back pain. After taking a pill and then sleeping for another half hour, he is relieved of pain for four or five hours, if he remains in a "peaceful position." He also takes drugs for hypertension and diabetes.

■ Thus, plaintiff's treating physicians had an unfavorable view of his work ability, and the examining doctor for the Secretary made similar clinical findings but did not venture an opinion on plaintiff's work capacity. Normally, the expert opinion of a treating physician as to a claimant's disability is binding on the Secretary in the absence of substantial evidence to the contrary.[9] Thus, the Court considers whether there is substantial evidence in the record to support the ALJ's determination that plaintiff's pain was not disabling.

■ It is well settled that subjective pain, whether or not accompanied by objective medical evidence, can provide the basis for a finding of disability.[10] Of course, the ALJ is not bound by medical reports or statements of the claimant but may evaluate the credibility of a claimant based on all the evidence.[11] Every medical report in the record concerning plaintiff's back condition contains objective clinical findings consistent with pain. Even Dr. Ladopoulos found that pain radiated through the leg.

The ALJ, however, rejected plaintiff's claim of disabling pain as not credible. He wrote that "[a]lthough there are still positive objective findings of back pain and discogenic disease ..., the claimant's daily activities reveal that he is not unduly restricted by his back problem." Plaintiff's daily activities, however, suggest curtailed activities which, in conjunction with the medical evidence and the essentially unchanged medical condition of plaintiff since he was originally awarded benefits in 1977, counter, the ALJ's findings. For example, the ALJ stated that on some days plaintiff walked the five flights of stairs to his apartment more than once, and that he walks six blocks to a doctor. Plaintiff elaborated that walking the stairs more than once a day is the exception, and that he rests on the way to the doctor when he feels tired or his leg hurts. The ALJ evidently focused only on that part of plaintiff's testimony which suggested limited ability in spite of pain. The ALJ at the hearing did not explore how plaintiff's ailments affected his daily routine, nor, for example, how painful it was for plaintiff to walk the stairs. Indeed, there is no indication that Leyva did not live in the same apartment at the time he initially won benefits, at which

9. *Aubeuf v. Schweiker*, 649 F.2d 107 at 112 (2d Cir. 1981); *Eiden v. Secretary of H. E. W.*, 616 F.2d 63, 64 (2d Cir. 1980); *McLaughlin v. Secretary of H. E. W.*, 612 F.2d 701, 705 (2d Cir. 1980).

10. *Aubeuf v. Schweiker*, 649 F.2d 107 at 111 (2d Cir. 1981); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1980); *Deyo v. Weinberger*, 406 F.Supp. 968 (S.D.N.Y.1975).

11. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1980); *Deyo v. Weinberger*, 406 F.Supp. 968, 973 (S.D.N.Y.1975).

time Dr. Perez said, among other things, that Leyva had difficulty climbing stairs.

■ In light of plaintiff's *pro se* appearance, the ALJ had the duty scrupulously to explore every possible avenue and fill in any gaps in the evidence.[12] Because of the inadequate development of the nature and quality of plaintiff's daily activities and how they bear on whether he has a disability based on pain, a remand is necessary for further inquiry.[13]

Further, in light of the other evidence in the record, the ALJ placed too much emphasis on his observation that the plaintiff did not appear to be in any pain at the hearing. While not rejecting this finding of fact, the Court finds sufficient evidence in the record to outweigh it. Further, as the Court of Appeals has recently stated, "[t]his finding also raises serious questions with respect to the propriety of subjecting claimants to a 'sit and squirm index.'"[14]

■ Thus, there is not "substantial evidence" in the record to support the Secretary's determination that plaintiff does not suffer from disabling pain. This is so in part because plaintiff's medical condition does not appear to have changed significantly since he was awarded benefits in 1977, because his treating physicians do not regard him to be capable of working, and because the ALJ's findings of incredibility are outweighed by objective evidence. On

remand the Secretary may "fill in the gaps" in the record.

■ In light of the need on remand for further inquiry into plaintiff's medical condition and ability to work, it is unnecessary to dwell on the Secretary's vocational findings. There is no disagreement that Leyva cannot perform his immediate past work— that of a warehouse helper. Thus, it is the Secretary's burden to produce evidence that alternative substantial gainful employment exists which the claimant can perform, considering his age, physical capability, education, and experience and training.[15] Recent amendments to the Social Security regulations are designed to provide some consistency in vocational determinations, which are based on an evaluation of the claimant's own abilities and the existence of jobs suitable for him.[16]

■ In evaluating the claimant's "residual functional capacity," the ALJ must consider strength and exertional capabilities.[17] The Secretary on remand should make a specific finding as to whether Leyva is capable of "sedentary" or "light" work, if it is found that he possesses some functional capacity. Sedentary work requires lifting up to ten pounds but is generally done while sitting; light work may require lifting up to twenty pounds and mostly standing or walking.[18] With the exception of Dr. Lado-

12. *Hankerson v. Harris*, 636 F.2d 893 (2d Cir. 1980); *Eiden v. Secretary of H. E. W.*, 616 F.2d 63, 65 (2d Cir. 1980). This is especially so in this case, where plaintiff arrived at the administrative hearing expecting an adjournment so that he could obtain a lawyer, and agreed to proceed *pro se* only after being advised that an adjournment would result in a delay in the ALJ's ultimate determination.

13. It is not startling that the cases differ enormously as to the effect of various kinds of daily activities on findings of disability. *Compare* cases in which activities have precluded a finding of disability, *e. g.*, *Rivera v. Harris*, 623 F.2d 212 (2d Cir. 1980); *Reyes v. Harris*, 486 F.Supp. 1063 (S.D.N.Y.1980); *Deyo v. Weinberger*, 406 F.Supp. 968 (S.D.N.Y.1975); *Carter v. Finch*, 308 F.Supp. 954 (S.D.W.Va.1969), *aff'd*, 421 F.2d 702 (4th Cir. 1970), *with* other cases declining to emphasize a claimant's ability to do certain things, *e. g.*, *Yawitz v. Wein-*

berger, 498 F.2d 956 (8th Cir. 1974); *Talifero v. Califano*, 426 F.Supp. 1380 (W.D.Mo.1977); *Robinson v. Richardson*, 360 F.Supp. 243 (E.D. N.Y.1973).

14. *Aubeuf v. Schweiker*, 649 F.2d 107 at 113 (2d Cir. 1981), *citing Tyler v. Weinberger*, 409 F.Supp. 776, 789 (E.D.Va.1976).

15. *Decker v. Harris*, 647 F.2d 291 at 293–294 (2d Cir. 1981); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

16. *Decker v. Harris*, 647 F.2d 291 at 294 & n.2 (2d Cir. 1981); *Vega v. Harris*, 636 F.2d 900, 902–03 (2d Cir. 1981); 20 C.F.R. Subpart P, §§ 404.1501–39 & Apps. 1 & 2.

17. *Id.* § 404.1505(b).

18. *Id.* § 404.1510.

poulos' finding that Leyva can lift twenty pounds, the evidence does not support a finding that he is capable of light work.

■ Further, the Secretary must make some showing that the job of clothing salesman, or any other job, is suitable for Leyva. In this regard, the finding by the ALJ that Leyva was able to perform the duties of a clothing salesman, his job in Cuba, is procedurally deficient. The original denial of benefits listed three occupations—case finisher, leaf stamper, and frame coverer—for which he was suited; however, in his decision after a hearing at which there was no testimony from a vocational expert, the ALJ concluded that Leyva was suited to be a clothing salesman. There is no explanation in this record for this shift.

■ Although there is no per se requirement that a vocational expert testify,[19] in the absence of such testimony the "claimant [must] be given adequate opportunity to challenge the suitability or availability of the jobs noticed."[20] In this case, even leaving aside that plaintiff appeared *pro se* before the ALJ, he had no chance to prepare to respond to the view that he was capable of being a clothing salesman.

Moreover, the ALJ's conclusion, without the benefit of expert testimony, that Leyva could return to the work he had done in Cuba is at least open to question. The ALJ appears to have assumed that, simply because Leyva had once worked as a clothing salesman, some twenty years previously, he is still capable of doing so. While this Court obviously does not judge the merits of this question, the regulations suggest that this is not an automatic assumption. At the latest, Leyva worked as a clothing salesman in 1968, the year he arrived in the United States. The regulations provide that work performed fifteen years before an adjudication is not "vocationally relevant" because it is no longer realistic to assume that skills then acquired are still relevant.[21] Although the fifteen-year mark has not quite been reached, other factors tend to bolster that view. Leyva has a limited education, as defined in the regulations, and also is unable to communicate in English.[22] These vocational handicaps, in addition to the time factor, should be specifically taken into account in deciding what job, if any, Leyva is capable of doing.

Although the Court may not reverse a decision of the Secretary simply because it disagrees with it, this case involves a set of "errors [which] standing alone might [not] be sufficient to set aside the Secretary's determination, [but in] combination persuades [the Court] that plaintiff did not have a fair and adequate hearing before the Secretary."[23] On remand, with plaintiff represented by counsel, there will be a better opportunity to explore the nature of plaintiff's pain and whether he retains any residual functional capacity. Further, the Secretary will be able to make vocational findings based on a full consideration not only of Leyva's physical and exertional capabilities but also of his educational and language background.[24]

As the record now stands, plaintiff's condition simply does not appear to have significantly changed since the original award of benefits, yet the benefits were terminated after proceedings in which all relevant factors were not considered. Thus, the decision of the Secretary is reversed and the matter remanded for further proceedings not inconsistent with this opinion.

So ordered.

19. *Decker v. Harris*, 647 F.2d 291 at 298 (2d Cir. 1981); *Hall v. Secretary of H. E. W.*, 602 F.2d 1372, 1377 (9th Cir. 1979).

20. *Decker v. Harris*, 647 F.2d 291 at 298 (2d Cir. 1981).

21. 20 C.F.R. § 404.1508.

22. *Id.* § 404.1507(d) & (f).

23. *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir. 1980).

24. *Cf. Vega v. Harris*, 636 F.2d 900, 903–04 (2d Cir. 1981) (ALJ's findings of fact inadequate where no findings on claimant's literacy and ability to communicate in English though she had four years of education only in Puerto Rico and hearing had to be conducted with interpreter though claimant had lived in United States for thirty years).