**Nikrouz GHAZIBAYAT, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

No. 82 Civ. 224(MEL).

United States District Court,
S.D. New York.

Jan. 10, 1983.

**1006**

Irwin B. Silverman, Brooklyn, N.Y., for plaintiff.

John S. Martin, Jr., U.S. Atty. for the S.D.N.Y., New York City, for defendant; Jorge Guttlein, Asst. U.S. Atty., New York City, of counsel.

LASKER, District Judge.

Nikrouz Ghazibayat filed an application on July 22, 1980 for a period of disability and disability insurance benefits, Sections 216(i) and 223 of Title II of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 416 and 423. Ghazibayat also filed for supplementary security income ("SSI") benefits, Section 1602 of the Act, 42 U.S.C. § 1381a, on February 20, 1981. Following initial denial and denial on reconsideration of both applications, Ghazibayat requested a hearing before an Administrative Law Judge ("ALJ") to review both determi-

1. 45 Fed.Reg. 55566.

nations. The ALJ's decision denying benefits to Ghazibayat was approved by the Appeals Council, and the ALJ's decision thus became the final decision of the Secretary of Health and Human Services ("the Secretary"). Ghazibayat subsequently sought review in this Court, and both parties moved pursuant to Fed.R.Civ.Pr. 12(c) for judgment on the pleadings. We referred the motion to Honorable Leonard Bernikow, United States Magistrate, for report and recommendation. Magistrate Bernikow filed his report on October 19, 1982, concluding that the ALJ's finding that Ghazibayat is not disabled was not supported by substantial evidence, and recommending that the ALJ's determination be reversed and the case remanded to the Secretary for computation of benefits. The Secretary filed objections to Magistrate Bernikow's report and requested affirmance of the Secretary's decision as represented by the ALJ's findings.

I.

Magistrate Bernikow's report reflects a thorough consideration of the evidence presented to the ALJ, the parties' contentions, and the applicable legal standards. We agree with the Magistrate's reasoning and conclusions, and add the following comments in order to respond to the Secretary's objections. Familiarity with Magistrate Bernikow's report, included as Appendix 1 to this opinion, is assumed.

The Secretary contends that the Magistrate failed to apply correct standards in evaluating the ALJ's findings. In particular, the Secretary takes issue with the Magistrate's allocation of the burdens of proof, and with his failure to discuss each of the five sequential steps which, pursuant to regulations promulgated by the Secretary in 1980, are applicable in evaluating disability claims, see 20 CFR §§ 404.1520, 416.920 (1982).[1] These contentions are unpersuasive. The Magistrate noted that once the claimant has met his burden under 42 U.S.C. § 423(d) of showing that his physical

impairment is severe enough to preclude a return to his former employment, the burden shifts to the Secretary to show the existence of "alternative substantial gainful work" consistent with plaintiff's physical capability, age, education, experience and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). The latter burden has two requirements: first, to establish that "the claimant's impairment is of a kind that still permits certain types of activity, such as lifting or walking, necessary for other occupations, and that the claimant's experience involves skills transferable to other work;" and second, to present evidence demonstrating "the existence of specific types of jobs, available in the national economy, suitable for a claimant with these capabilities and skills." *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir.1981); *see also Campbell v. Secretary of the Department of H.H.S.*, 665 F.2d 48, 53 (2d Cir.1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982).

This analysis of the relative burdens of proof is correct. The five-step analysis adopted in the 1980 regulations did not supplant the standards cited by the Magistrate, as the Secretary implies, but merely provided a more detailed model for applying those standards.[2] This five-step sequence has been summarized as follows:

> "[1] First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. [2] If he is not, the Secretary next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. [5] Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one."

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982); 20 CFR §§ 404.1520, 416.920 (1982). As a comparison of this five-step analysis with the analysis cited by the Magistrate shows, the Secretary's burden—that of proving that a claimant who is unable to return to his past work can perform other available work—is the same under both analyses. Since the ALJ simply focused upon this latter issue in his decision, it is clear, despite the absence of specific findings on the first four steps described above,[3] that the ALJ answered the second inquiry of the five in the affirmative and the first, third and fourth in the negative.[4]

---

**2.** The same case that the Secretary cites for the proposition that the Magistrate applied the wrong standards, *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.1982), cites the very standards used by the Magistrate as well. *Id.* at 467; *see* also *Decker v. Harris, supra*, 647 F.2d at 294.

**3.** The Secretary states in his memorandum of law that "the Secretary [the ALJ] determined that the medical evidence shows that the plaintiff's conditions are not attended by clinical findings that meet or equal in severity the relevant requirements of Part A of Appendix 1 to 20 CFR part 404, Subpart P." (Memorandum in Support of Defendant's Objections at 4).

This is simply incorrect. The ALJ did not specifically discuss the Appendix 1 standards in his decision.

**4.** The clear evidence that the ALJ considered Ghazibayat's impairments severe enough to prevent a return to his former work is the ALJ's use of Appendix 2 to Subpart P of 20 CFR § 404, Rule 201.27 Table 1 in determining Ghazibayat's "residual functional capacity." Appendix 2 by its terms is applicable only "where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the

Although the Magistrate's focus upon whether the Secretary sustained his burden of showing Ghazibayat capable of at least sedentary work was thus appropriate, our review of the evidence shows that the ALJ's decision must also be reversed on the additional ground that Ghazibayat's impairments meet the standards set forth in Appendix 1 of the regulations (Step 3 of the five-step sequence described above), an issue which the Magistrate did not discuss. Thus, in ratifying the Magistrate's conclusion that the ALJ's decision was unsupported by substantial evidence, we address both the question of whether Ghazibayat's impairments meet the standards set forth in Appendix 1 of the regulations, and the question of whether the evidence warranted the ALJ's conclusion that Ghazibayat was capable of sedentary work.

█ The standards relating to Ghazibayat's claim of disability based on his back injury are set forth in Part A of Appendix 1 to 20 CFR § 404, Subpart P, § 1.05(C), which is reproduced in the margin.[5] Although there is no need to reiterate the Magistrate's discussion of the evidence presented, a few points are emphasized below in order to respond to the Secretary's arguments. First, as the Magistrate correctly noted, the expert opinion of a claimant's treating physician is binding upon the Secretary absent substantial contradicting evidence, *see Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978). The findings of Drs. Claude Carmichael and Stanley Rabinowitz, upon which the ALJ relied, do not provide substantial evidence contradicting the findings of Ghazibayat's primary treating physician, Dr. Carl Rothschild, and of another treating physician, Dr. David Rosenbaum. Dr. Rabinowitz, who examined Ghazibayat once at the request of the Social Security Administration, simply made no general finding as to the level of disability attributable to Ghazibayat's back condition. (Tr. 106–108).[6] As for Dr. Carmichael, a treating physician, it is true that his report reflected some scepticism as to the amount of pain Ghazibayat was experiencing.[7] (Tr. 115–117). However, Dr. Carmichael stated in his report that he could not provide a conclusion as to Ghazibayat's capacity for standing, walking, sitting, and similar functions. (Tr. 104). His tentative conclusion that Ghazibayat was "probably able" to perform sedentary work, but that he could not determine whether Ghazibayat's incapacity was real without a myelogram (which Dr. Carmichael never performed) does not amount to substantial evidence contradicting Dr. Rothschild's firm conclusion, based on his extended treatment of Ghazibayat over a period of more than a year, that he was totally disabled on account of a discogenic disorder. (Tr. 104, 118). Dr. Rothschild's conclusion, of course, does not stand alone in the record, but is buttressed by the opinion of Dr. Rosenbaum[8] and by the results of various clinical

performance of his or her vocationally relevant past work." Appendix 2, § 200.00.

5. "1.05 *Disorders of the spine*
 * * * * * *
 (C) Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."

6. His finding that walking, standing and climbing were "not impaired" related only to whether hip pain was causing an impairment of those activities (Tr. 108). As to the back disorder, he did find "loss of motion associated with pain,"

as well as "evidence of nerve root irritation and mild decreased strength in the left lower extremity," noting that "reflexes remain intact." (Tr. 107).

7. Despite this scepticism, however, Dr. Carmichael's findings as to the medical basis of Ghazibayat's back condition generally accorded with Dr. Rothschild's findings; he diagnosed back pain associated with a "probable L4–5" disc disorder. (Tr. 117).

8. Dr. Rosenbaum admitted Ghazibayat to treatment for "suspected lumbosacral disc protrusion and radiculopathy" and pronounced him "completely disabled." (Tr. 129). His suspicion of a discogenic disorder was confirmed by tests conducted at his direction at the Mt. Sinai Medical Center in New York City, which showed disorder of the L5 and S1 interspaces.

tests performed by several different doctors (Tr. 119, 126, 129, 132–33).

As to the question whether Ghazibayat's impairment meets the standards set forth in Appendix 1,[9] the Secretary inexplicably argues that "none of the physicians who submitted reports included in the record found that plaintiff had muscle spasms or *significant* motor loss with muscle weakness and sensory and reflex loss." (Memorandum in Support of Defendant's Objections at 11.) In fact, Dr. Rothschild, in a report dated July 14, 1981, noted "bilateral vertebral muscle spasms,"[10] stated that "straight leg raising is limited to 15 degrees bilaterally," and reported "considerable constriction of motion" (Tr. at 104). He reported that Ghazibayat was severely limited in his ability to sit, stand and walk, and was unable to lift, carry, bend, squat or stoop. Dr. Rothschild noted similar findings, along with muscle weakness, in another report (Tr. at 118), while Dr. Rabinowitz, the physician consulted by the SSA, noted "decreased sensation and mild decreased strength in the left lower extremity." (Tr. 107). The ALJ noted findings of muscle spasm in his opinion (Tr. 13, 14); thus, the Secretary's statement that no physicians reported such findings is clearly incorrect.

█ In sum, the evidence before the ALJ, in view of the legal requirement that a treating physician's findings cannot be rejected in the absence of substantial contradictory evidence, compelled the conclusion that Ghazibayat was disabled, on account of his back condition alone, according to the requirements of Appendix 1 of the regulations. The conclusion of disability is further supported in light of the requirement that Ghazibayat's claim be considered with reference not only to his back condition but also with regard to the evidence of "moderately severe hypertension" (Tr. 14, 130) from which he suffers, *see* 20 CFR § 416.922 (1982); *Kolodnay v. Schweiker,* 680 F.2d 878 at 879–80 (2d Cir. 1982).[11]

### II.

█ Even if Ghazibayat's impairments did not meet the requirements of Appendix 1 of the regulations, however, reversal of the ALJ's decision would be necessary because his conclusion that Ghazibayat was capable of performing sedentary work[12] is unsupported by substantial evidence. Since Ghazibayat established that he was unable to return to his former employment, the Secretary bore the burden of showing that Ghazibayat could perform at least sedentary work, *see Decker v. Harris, supra,* 647 F.2d at 294. The ALJ concluded that Ghazibayat's testimony, together with the conclusions of Dr. Carmichael and Dr. Rabinowitz, were "entirely consistent with the requirements of sedentary work" (Tr. at

9. See note 5 *supra.*

10. A report of the St. Francis Hospital Medical Center in Peoria, Illinois, in addition, noted findings of scoliosis which was possibly due to muscle spasm. (Tr. 119). Dr. Carmichael reported findings of "mild spasms or paravertebral muscles" in an examination of Ghazibayat on May 19, 1981. (Tr. 115).

11. In *Kolodnay, supra,* the case was remanded to the ALJ because he had failed to consider the possible combined effect of the various ailments alleged by the claimant. In the instant case, by contrast, the ALJ noted that he had considered the claimed impairments in combination (Tr. 15). Thus, since the problem is not that the ALJ failed to make a determination, but rather that his determination was unsupported by substantial evidence, no remand is warranted.

12. As defined in the regulations, sedentary work

"involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR §§ 404.1567(a), 416.697(a) (1982). Obviously the job of a taxicab driver does not fit within this category, if only because it requires lifting baggage for passengers. Similarly, Ghazibayat's testimony made clear that his prior job as a restaurant manager was not sedentary work; the vast majority of his time at that job was spent walking and standing in order to perform tasks such as cooking, checking inventory, and the like. (Tr. 36–37).

15), and found that "although the claimant experiences pain, this pain is not constant, severe or disabling." (Tr. 16). As noted previously, neither Dr. Carmichael nor Dr. Rabinowitz came to definite conclusions about the level of impairment caused by Ghazibayat's back condition. Indeed, Dr. Carmichael specifically noted his inability to come to a conclusion as to Ghazibayat's functional capacities. (Tr. 117). The bland assertion that the findings of Dr. Carmichael and Dr. Rabinowitz are "consistent with" the requirements of sedentary work simply glosses over the lack of specific findings by these physicians on the issue.

Moreover, the ALJ's statement that Ghazibayat's testimony was also consistent with the requirements for sedentary work is entirely unsupported. Ghazibayat testified that he could not sit or stand for more than a few minutes at a time, could not walk more than a few blocks, was unable to take public transportation, and had to spend most of each day lying on the couch (Tr. 48, 49, 52, 54). He stated that he had ceased performing any household chores or engaging in any activities, including going to church, because of his back pain. (Tr. 56–58, 61). Ghazibayat's specific testimony on his work capabilities was as follows:

[by ALJ]

"Q. Have you looked for a job in the past year?

A. I couldn't. I can't work, sir, so how—

Q. Why can't you do your former job as a manager in a restaurant or a taxi driver?

A. I can't even sit for five minutes, sir, how can I—

Q. Do you think you could do a job where you could sit or stand for 6 to 8 hours a day?

A. I can't even sit for five minutes, sir.

Q. How about working on objects on a table in front of you. Do you think you could work on small objects on a table in front of you?

A. I can't sit, sir.

Q. Could you do a job if you didn't have to lift more than five pounds?

A. I can't—I have so much pain, I don't—

Q. Can you follow simple instructions, like packing a small object? Can you do that?

A. If I—I have to lie down. If I can do it there lying down, I might could [sic], cause I can move my hands alright."

(Tr. 61). Plainly, the ALJ's conclusion that Ghazibayat's testimony was consistent with the requirements of sedentary work must be rejected.

### III.

The Secretary's emphasis on the ALJ's right to make credibility determinations as to the amount of pain experienced by Ghazibayat is misplaced. The ALJ is not required to take a claimant's allegations of pain at face value. However, this is not a case where the medical evidence fails to establish a physical basis for the claimant's report of pain, cf. *Gaultney v. Weinberger*, 505 F.2d 943 (5th Cir.1974), or where the claimant's report of his work and household activities is inconsistent with disabling pain, cf. *Miles v. Harris*, 645 F.2d 122 (2d Cir. 1981). In order to find that the Secretary met his burden of showing that Ghazibayat could perform sedentary work, the ALJ had to reject not only Ghazibayat's subjective testimony regarding the pain he experienced, but also the reports of Ghazibayat's physicians and the clinical findings of record as well, which, as discussed previously, showed a clear physical basis for the pain he described.[13] Under these circumstances, an ALJ's right to make credibility determina-

13. The Secretary points out Dr. Carmichael's statement that he could not be sure to what extent the pending litigation was influencing Ghazibayat's examination responses, but that he was sure it was having "some effect." (Tr. 110). He based this statement on the fact that Ghazibayat "continually turns the conversation to the problem of this hearing" (Tr. 115).

While it may be true that such conduct was having "some effect" on Ghazibayat's behavior it does not follow, of course, that because Ghazibayat was obviously concerned with the hearing, he was necessarily a malingerer. In addition, the statement in a report from the Medical and Surgical Consultation Clinic, that Ghazibayat engaged in "voluntary guarding" while be-

tions cannot by itself insulate his ultimate decision from review, particularly since the ALJ did not explicitly rest his decision on a finding that Ghazibayat's testimony was not credible, but instead simply mentioned, in a recitation of the matters he considered in reaching his decision, that he had taken Ghazibayat's credibility into account (Tr. 15).

## IV.

 Finally, the Secretary places great weight on the ALJ's finding that Ghazibayat's pain is relieved for "up to five hours" by medication. Of course, an impairment that is remediable by treatment cannot be considered disabling. *See Coleman v. Califano,* 462 F.Supp. 77 (N.D.N.Y.1978). However, in the context of this case, the Secretary's citation of this principle is inapposite. This is not a case in which the ailment upon which the disability claim is predicated can be eliminated through prescribed treatment. *Cf. Coleman, supra,* 462 F.Supp. at 81 (claimant failed to follow doctor's advice on weight reduction); *Fields v. Secretary of Health, Education and Welfare,* 444 F.Supp. 1003 (S.D.N.Y.1977) (medication eliminated seizures which were the primary basis of the disability claim). Rather, this is a case in which the pain experienced by the claimant can be alleviated to a certain extent for a period of two to five hours at most by taking various medications. (Tr. 47). This does not provide a reasonable basis for concluding that Ghazibayat can engage in substantial gainful activity.

Because the conclusion that Ghazibayat is able to perform sedentary work as described in the regulations is unsupported by the evidence, we need not reach the issue whether a remand would be necessary under *Campbell, supra,* because of the ALJ's failure to identify specific jobs that he believed Ghazibayat to be capable of performing.[14] Our holding also makes it unnecessary for us to address the question whether the additional evidence offered by Ghazibayat provides an appropriate basis for remand.

For the foregoing reasons, the decision of the Secretary denying Ghazibayat disability insurance and SSI benefits is reversed, and the case remanded to the Secretary for computation of benefits.

It is so ordered.

## APPENDIX

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

TO THE HONORABLE MORRIS E. LASKER, U.S.D.J.:

Plaintiff has brought this action seeking judicial review, pursuant to Section 205(g)

---

ing examined, does not provide proof that Ghazibayat was not experiencing pain, or that his condition was such as to permit sedentary work, a question which that report does not address. Finally, the Secretary's argument that Ghazibayat "had no trouble sleeping," even if it is a fair statement of Ghazibayat's testimony, *see* Tr. 46, is inconclusive at best. As discussed earlier, Ghazibayat's testimony was quite consistent on the fact that he was comfortable only when lying down; thus, his failure to report great difficulty sleeping cannot fairly be taken to contradict his report of disabling pain in connection with other activities.

14. As noted earlier, the Secretary's burden of showing that a claimant who is unable to perform his past work can perform other available work has two parts—first, that of showing that the claimant's impairments are of a kind that still permit activities necessary for other occupations, and second, that of showing the existence of specific jobs available in the economy that the claimant could perform. *Decker v. Harris, supra,* 647 F.2d at 294, *Campbell, supra*

at 53. The *Campbell* holding relates to the second part of the Secretary's burden, while our reversal of the ALJ's decision rests on the first part of that burden, along with our additional holding that the evidence showed Ghazibayat's impairments to meet the requirements set forth in Appendix 1 of the regulations.

The Secretary has not argued that a remand would be appropriate for additional findings on the issues upon which we *do* rest our decision, and under the circumstances no remand is warranted. This is not a case where there are significant "gaps" in the record which require additional evidence, *cf. Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751 (2d Cir.1982). Rather, the ALJ simply failed to give a reasonable construction, supported by substantial evidence, to the record before him, and the evidence of record persuasively establishes instead that Ghazibayat is entitled to benefits. *See Gold v. Secretary of HEW,* 463 F.2d 38, 44 (2d Cir.1972).

of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), of the final determination of the Secretary of the Department of Health and Human Services (hereinafter referred to as "the Secretary"), denying his application for a period of disability and disability insurance benefits under Sections 216(i) and 223 of Title II of the Act, 42 U.S.C. §§ 416 and 423, and supplemental security income ("SSI") under Section 1602 of the Act, 42 U.S.C. § 1381a. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R. Civ.P. The motion was referred to me to report and recommend, by endorsement dated July 19, 1982. *See* 28 U.S.C. § 636(b)(1)(B).

*Background*

Plaintiff filed his application for a period of disability and disability insurance benefits on July 22, 1980, alleging that he was rendered unable to work as of June 19, 1980 due to injuries to his head, back and left arm sustained in a traffic accident on that day. Tr. 64–67.[1] The application was denied initially on August 29, 1980, tr. 68–69, and on reconsideration on March 25, 1981. Tr. 72–74. The plaintiff also filed an application for SSI benefits on February 20, 1981. Tr. 75–78. This application was initially denied on March 25, 1981, tr. 79, and on reconsideration on March 27, 1981. Tr. 80–81.

On April 27, 1981 plaintiff filed a request for a hearing to review both determinations, tr. 82; the hearing was held on July 22, 1981 before an Administrative Law Judge ("ALJ"), with plaintiff represented by counsel. Tr. 25–63. While only plaintiff testified, copies of numerous medical reports were submitted as exhibits, considered by the ALJ, and incorporated into the record.

In a decision dated August 31, 1981 the ALJ found that plaintiff was not under a disability as defined in the Social Security Act and therefore was not entitled to benefits. Tr. 17. The Appeals Council denied plaintiff's request for review and approved the ALJ's decision on November 20, 1981.

Tr. 4–5. Accordingly the ALJ's decision became the final decision of the Secretary. Plaintiff, having exhausted his administrative remedies, now seeks review of the Secretary's final decision.

Plaintiff was born in Iran on March 22, 1942 and came to the United States in 1971. Tr. 30. He speaks and reads English. He attended high school in Iran and received a high school equivalency diploma in New York City in approximately 1977. Tr. 32. Plaintiff also received training for nine months at RCA in television repairs, tr. 32, 35; but he did television repair work, which involved lifting television sets and removing the chassis, for only a few months. Tr. 36, 37. Then, for lack of TV jobs, he went to work driving a taxi, a more sedentary occupation, which he did for six years. Tr. 36. In 1978 he got a job as a restaurant manager at a Bagel Nosh restaurant in New York City, having previously worked at a similar job in Florida. At Bagel Nosh he did some cooking, tended the counter and cash register and took inventory. Most of the time he was on his feet, standing or walking. Tr. 36, 37. He was laid off in January 1980 and collected unemployment compensation for about three months before his accident, tr. 34, 35, in which a bus struck a car he was driving. Tr. 35.

Plaintiff stated at the hearing before the ALJ that he has constant severe pain in the lower back radiating down both legs. Tr. 44, 45, 51–53. Although he wears a back brace, tr. 45, he said that because of the pain he cannot sit for more than three or four minutes without needing to stand, cannot stand for more than ten minutes or walk more than a few blocks. Tr. 52. He cannot use public transportation but is forced to take taxis if it is necessary for him to venture any distance. Tr. 54. Plaintiff cannot climb stairs, tr. 52, 56, bend over, or lift anything weighing five pounds or more. Tr. 53. He stated that he can, however, extend his arms outward or upward, make fists, manipulate his fingers, and grasp objects without difficulty. Tr.

---

1. "Tr." refers to the transcript of the adminis-trative record filed with the Secretary's answer.

53–54. He also testified that he sleeps well but sometimes has to get up during the night. Tr. 46.

The plaintiff testified that he no longer drives a car, tr. 54–55, or does any household chores, tr. 56, 61, but is able to shower and shave and dress himself. Tr. 56, 59. He has stopped going to church, or to restaurants, because the pain in his back prevents him from sitting for long. Tr. 57–58. He further testified that he is only comfortable lying down and then only if he lies on his side with his legs drawn up. Tr. 48, 49. He spends most of his time reading and watching television. Tr. 60. Although one doctor recommended exercises a few times a day, he finds them too painful and no help for his condition. Tr. 51. In addition to back pain, plaintiff suffers from some dizziness, frequent headaches, tr. 44, 47, 48, an irregular heartbeat, and high blood pressure. Tr. 44, 50. All of plaintiff's complaints are relieved by medication. The medicine he takes for his back relieves the pain for up to five hours. Tr. 47. It is not clear from his testimony whether the medicine kills or lessens the pain. *Id.*

*The ALJ's Determination*

The ALJ determined that plaintiff was not entitled to a period of disability, disability insurance benefits, or SSI. Tr. 17. He concluded that the "totality of [the] evidence" failed to establish that plaintiff was suffering from "pain of such severity and frequency as to prevent him from engaging in substantial gainful activity." Tr. 15.

*Discussion*

It is not the function of a reviewing authority to make a *de novo* finding. Rather, the sole issue for judicial review is whether the Secretary's decision, based on the whole record, that plaintiff is not under a disability is supported by substantial evidence. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *Aubeuf v. Schweiker,* 649

F.2d 107, 112 (2d Cir.1981). Substantial evidence means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). The evidence " 'must do more than create a suspicion of the existence of the fact to be established.' " *Scott v. Celebreeze,* 241 F.Supp. 733, 736 (S.D.N.Y.1965) (Feinberg, J.), quoting *Rayex Corp. v. F.T.C.,* 317 F.2d 290, 292 (2d Cir.1963). Hence, while the court will not substitute its judgment for that of the Secretary, neither will it act as a rubber stamp of administrative determinations. *Correa v. Secretary of Health and Human Services,* 501 F.Supp. 236, 237 (S.D. N.Y.1980).

Plaintiff has the burden of proving disability. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). Under 42 U.S.C. § 423(d)(1)(A), disability is defined[2] as the

> inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Under (d)(2)(A) of the same section, a claimant is not disabled unless

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he should be hired if he applied for work . . .

**2.** This definition of disability is virtually identical to the definition used in SSI disability benefit cases under 42 U.S.C. § 1382c(3). In addition the standard for judicial review is also identical, 42 U.S.C. § 1383c(3). As a result, cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(3) are cited interchangeably. *Hankerson v. Harris,* 636 F.2d 893, 897 n. 2 (2d Cir. 1980). Thus, in our case, the discussion is the same for plaintiff's claim to SSI benefits and disability claims.

In assessing disability, four factors are to be considered: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience. *Rivera v. Harris,* 623 F.2d 212, 215–16 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 42 (2d Cir.1972). With these considerations in mind, eligibility for benefits is to be determined in light of the remedial or beneficent purpose of the Act and the liberal construction that is favored in interpreting it. *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975); *see also Marcus v. Califano,* 615 F.2d 23, 29 (2d Cir.1979).

### 1. *The Secretary's Burden*

Plaintiff met his initial burden, required by 42 U.S.C. § 423(d), of showing, at least, that his physical impairment is serious enough to preclude a return to his previous employment as taxi driver or restaurant manager. Although the ALJ did not specifically so find, he implied as much in finding that plaintiff "has the residual functional capacity for at lease [sic] sedentary work." Tr. 16.

Once plaintiff has satisfied his initial burden of proving disability, the burden shifts to the Secretary to show the existence of "alternative substantial gainful work" commensurate with plaintiff's physical capability, age, education, experience and training. *Parker v. Harris, supra,* 626 F.2d at 231; *Flores v. Department of H.E.W.,* 465 F.Supp. 317, 329 (S.D.N.Y.1978).

Specifically, the Secretary's burden is twofold: (1) to show that plaintiff's "impairment is of a kind that still permits certain types of activity . . . necessary for other occupations, and that claimant's experience involves skills transferable to other work," and (2) "the existence of specific types of jobs, available in the national economy, suitable for a claimant with these capabilities and skills." *Decker v. Harris,* 647 F.2d 291, 294 (2d Cir.1981).

Regarding the first part of the Secretary's burden, the ALJ found that plaintiff has the residual functional capacity for at least sedentary work. This determination was apparently based on the ALJ's belief that "Although the claimant experiences pain, this pain is not constant, severe or debilitating." Tr. 16. However, in view of plaintiff's own testimony and the unqualified opinions of two treating physicians, it is clear that the ALJ's finding is not supported by the record.

### 2. *The Objective Medical Evidence*

The medical evidence reviewed by the Secretary is in documentary form, comprising reports about plaintiff's condition by various specialists, four of them treating physicians. It is well settled that the expert opinion of a claimant's treating physician is binding on the Secretary unless contradicted by substantial evidence to the contrary. *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980); *accord, Eiden v. Secretary of H.E.W.,* 616 F.2d 63 (2d Cir.1980); *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979); *Bastien v. Califano, supra,* 572 F.2d at 921; *Gold v. Secretary of H.E.W., supra,* 463 F.2d at 42. However, in this case the medical evidence as a whole, including the evidence of the treating physicians themselves, is somewhat contradictory.

Dr. Carl E. Rothschild, an orthopedic specialist, treated plaintiff from June 23, 1980, four days after his accident, until at least July 21, 1981, when he diagnosed a herniated disc and pronounced plaintiff "totally disabled." His prognosis on that date was: "Will remain disabled for forseeable [sic] future." Tr. 131, Ex. 25. The prognosis confirmed his report of a year before (date unclear) in which he stated that plaintiff was not responding well to treatment and was not able to work, tr. 104, ex. 16, and a report dated February 13, 1981 in which he concluded that plaintiff suffered from a herniated disc and was permanently disabled. Tr. 118, Ex. 20. Dr. David H. Rosenbaum, a neurologist, reported on July 15, 1981, that plaintiff was under his care for

suspected lumbosacral disc protrusion and radiculopathy (nerve root disease), and described plaintiff as "completely disabled." Tr. 129, Ex. 23. An electromyographic report from Mt. Sinai Medical Center to Dr. Rosenbaum dated July 20, 1981, showing bilateral L5–S1 (disc space) dysfunction, confirmed his suspicions. Tr. 132, Ex. 26.[3]

Dr. Hossain Awini, another treating physician, reported on July 17, 1981 that upon examination plaintiff revealed an irregular heartbeat and moderately severe hypertension. Tr. 130, Ex. 24. Although plaintiff alleges disability resulting from a combination of headaches, hypertension and back pain, it is the presence and persistence of back pain and its consequences about which there is some difference of opinion among the treating physicians and which is therefore the focus of the present inquiry.

The opinion of a fourth treating physician, Dr. Claude R. Carmichael, concurs in the diagnosis of a lower back disorder and abnormal heartbeat but departs, if tentatively, from the conclusion of total disability. Tr. 114–117, Ex. 19. Dr. Carmichael states that plaintiff is "probably able" to do sedentary work but is "[p]ossibly disabled" as to light, moderate or heavy work. He states that without a myelogram—which was apparently not performed—he "can't know how much of plaintiff's apparent incapacity is real" or give a definite answer regarding plaintiff's ability to walk, stand, sit or lift. Dr. Carmichael describes plaintiff as an "extremely anxious man" and opines that a truly competitive work situation may not be suitable for plaintiff. Tr. 117.

In March 1981, apparently at the request of the Social Security Administration, plaintiff received a consultative examination at Midwest Medical Services in Peoria, Illinois. The report of that examination, dated March 5, is signed by Dr. Stanley Rabinowitz. Dr. Rabinowitz found plaintiff to be suffering from hypertension, chronic low back syndrome with nerve root irritation and arthralgias[4] of both hips. His conclusion that "walking long distances, as well as standing and especially climbing is not impaired secondary to [that is, due to] hip pain," tr. 108, is reported by the ALJ as "walking for long distances, standing and especially climbing were not impaired." Tr. 15. It appears Dr. Rabinowitz made no general statement concerning plaintiff's impairment due to back pain. In any case, the opinion of a consulting physician should be afforded less weight than that of a treating physician. *McLaughlin v. Secretary of Health and Human Services,* 612 F.2d 701, 705 (2d Cir.1980).

In sum, two out of four treating physicians found plaintiff to be totally incapacitated and unable to work; a third thought plaintiff might be able to do sedentary work but couldn't make a definitive evaluation without a myelogram that was apparently never done; a consultant apparently made no statement as to plaintiff's ultimate impairment or ability to work; and a fourth treating physician found plaintiff to be suffering from moderately severe hypertension. On this and other, less significant medical evidence the ALJ concluded, in evaluating plaintiff's allegations of pain, that his claim that he is unable to work was unpersuasive and unsupported by substantial evidence; moreover that Dr. Carmicha-

---

**3.** Merck's Manual 1234 (12th ed. 1971) describes the etiology of degenerative disc disease as follows:

"The intervertebral disks, especially between the fourth and fifth lumbar vertebrae and between the fifth lumbar and sacrum, are subject to great forces and degenerative changes. When the ligaments surrounding the disk are injured and weakened, disk material begins to extrude. If this happens abruptly, the "acute low back" syndrome appears; if, instead, the disk material produces gradual but persistent pressure, the symp-

toms are those of the "chronic low back." Both are accompanied by back pain.

"As degenerative changes progress, with disk material protruding posteriorly into the neural canal, the true disk syndrome appears, the result of the pressure on the sciatic nerve root(s). The lesion is usually unilateral, laterally. The amount of nerve pressure may vary, depending on the size of the protrusion, local inflammation, and edema."

**4.** Arthralgia is defined as pain in the joint.

el's and Dr. Rabinowitz's evaluations, taken together with claimant's testimony, were "entirely consistent with the requirements for sedentary work." Tr. 15.

Bearing in mind that the opinion of a treating physician is binding on the Secretary, this conclusion of the ALJ is not supported by the weight of the treating physicians' evidence.

### 3. *The Subjective Evidence of Pain*

Plaintiff's testimony was that he suffers from persistent, intense, disabling low back pain. It is settled, both in this circuit and in others, that subjective testimony as to pain is probative on the issue of disability, even if it is unsupported by positive clinical or other "objective" evidence. *Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751 (2d Cir.1982); *Hankerson v. Harris, supra,* 636 F.2d at 895; *Marcus v. Califano, supra,* 615 F.2d at 27; *Northcutt v. Califano,* 581 F.2d 164, 166–67 (8th Cir. 1978); *Stark v. Weinberger,* 497 F.2d 1092, 1097 (7th Cir.1974); *Sayers v. Gardner,* 380 F.2d 940, 948 (6th Cir.1967); *Celebreeze v. Warren,* 339 F.2d 833, 837–38 (10th Cir. 1964); *Page v. Celebreeze,* 311 F.2d 757, 762–63 (5th Cir.1963).

Here there was both subjective evidence of pain and supporting objective clinical evidence, but the ALJ nevertheless rejected it—though he does not say that in so many words—in favor of a qualified medical opinion plus his own observations. "The statute puts a limitation on the court's power of review, but there is a concomitant duty on the Secretary to explicate the grounds of his decision." *Vitek v. Finch,* 438 F.2d 1157, 1160 (4th Cir.1971). In evaluating plaintiff's allegations of pain, the ALJ

> considered the symptoms he described, his appearance and demeanor at the hearing, his *credibility* regarding the constancy and extent of his pain and the limitations it imposes on his ability to function, his description of his daily activities, the medical findings and opinions and the medication prescribed.

Tr. 15 (emphasis added).

The ALJ is not bound to credit subjective evidence without question. *Marcus v. Cali-*

*fano, supra,* 615 F.2d at 27; *Spicer v. Califano,* 461 F.Supp. 40, 47–48 (N.D.N.Y.1978). He "clearly has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano, supra,* 615 F.2d at 27. However, where plaintiff's testimony of his persistent disabling pain is corroborated by the medical reports of two treating physicians, and the ALJ rejects this strong evidence in favor of insubstantial evidence ("probably able" to do sedentary work), the reasons why should not be left to speculation. If, as here, the ALJ rejects the expert opinions of two treating doctors, he must make a specific finding to that effect and must "expressly state clear and convincing reasons for doing so." *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975); *accord, Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir.1981); *King v. Califano,* 615 F.2d 1018, 1020 (4th Cir.1980). More than that, if he disbelieved "plaintiff's testimony about pain, he should have said so" and why. *Chiappa v. Secretary of H.E.W.,* 497 F.Supp. 356, 361 (S.D.N.Y.1980). His not saying so, and his not saying anything specific except that he had considered the testimony as part of the whole record, tr. 15, "could lead to a conclusion that he neglected to consider it at all." *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). *See also Rosowicz v. Secretary of Health and Human Services,* 477 F.Supp. 669, 671 (W.D.N.Y.1979).

A reviewing court must know the basis for an ALJ's decision so that it can properly exercise its responsibility under the statute. *Cotter v. Harris, supra,* 642 F.2d at 705; *Chiappa v. Secretary of H.E.W., supra,* 497 F.Supp. at 362. He has an "obligation virtually amounting to an affirmative duty" to show clearly in the record that he is aware of the Second Circuit's rules governing the opinions of treating physicians. *Chiappa v. Secretary of H.E.W., supra,* 497 F.Supp. at 360. Surely his obligation is no less with

respect to the rules governing subjective testimony of pain. These obligations become crucial in the instant case, where the record supports the conclusion, contrary to the ALJ's finding, that plaintiff is totally disabled.

Accordingly, the Secretary's decision that plaintiff can perform sedentary work is not supported by substantial evidence. In the absence of such evidence a remand to the Secretary for an explanation of the ALJ's findings would serve no purpose. Therefore, since the Secretary has not met the first part of his burden, it is recommended that the determination of the ALJ be reversed and the matter remanded to the Secretary for the computation of benefits.

Regarding the second part of the Secretary's burden, the existence of suitable alternative employment, a remand would have been necessary in view of the Second Circuit's decision in *Campbell v. Secretary of the Department of H.E.W.*, 665 F.2d 48, 53 (2d Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982). However, I need not reach this issue in view of my finding that the Secretary has not satisfied the first part of his burden.[5]

*Conclusion*

For the foregoing reasons, it is recommended that plaintiff's motion for judgment on the pleadings be granted and the Secretary's motion be denied and that the determination of the ALJ be reversed and remanded to the Secretary for the computation of benefits.

Copies of this Report have been mailed this date to the attorneys listed below who are hereby instructed that any objections to this Report be filed in accordance with Rule 7 of the Magistrates' Rules of this Court.

Dated: New York, New York
October 19, 1982

Respectfully submitted,
(s) Leonard Bernikow
LEONARD BERNIKOW
United States Magistrate

---

**5.** Plaintiff has submitted five new medical reports relevant to his condition. In view of my finding that the Secretary's decision should be reversed, I need not touch on this new evidence except to comment that had this case been remanded for reconsideration it might have been appropriate for the Secretary to consider the new evidence, especially the psychiatric evaluation of Dr. Paul Salkin.

The Act provides that a court may order additional evidence to be taken, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) as amended June 9, 1980. Good cause is shown for the failure to incorporate Dr. Salkin's or any other psychiatrist's report in the prior proceeding. Both the level of plaintiff's education and the very nature of depression militate against plaintiff's recognizing his psychological symptoms for what they are. Moreover it appears from Dr. Salkin's report that plaintiff's psychiatric condition has been worsening.