Ralph A. TAMBORRA, Plaintiff,

v.

Margaret M. HECKLER, as Secretary of Health and Human Services, Defendant.

No. 84 Civ. 1620(RWS).

United States District Court, S.D. New York.

March 28, 1985.

Davison F. Moore, Poughkeepsie, New York, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Mark S. Sochaczewsky, Sp. Asst. U.S. Atty., Annette H. Blum, Regional Attorney—Region II, Richard E. Pravda, Asst. Regional Atty., New York City, of counsel.

## OPINION

SWEET, District Judge.

This is an action brought by plaintiff Ralph Tamborra ("Tamborra") under section 205(g) of the Social Security Act, as amended (the "Act"), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (the "Secretary"), which denied Tamborra's application for federal disability insurance benefits. Tamborra has now moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings. The Secretary has cross-moved for an order pursuant to Rule 12(c) affirming the decision. For the following reasons the decision of the Secretary is reversed, and the case is remanded to the Secretary for further proceedings consistent with this opinion.

**Prior Proceedings**

Tamborra filed an application for disability insurance benefits on May 18, 1983, alleging that he had been disabled since January 1, 1983. His application was denied initially and on reconsideration, and Tamborra subsequently requested a hearing to review his application. The hearing was held on December 13, 1983. Tamborra appeared with his attorney before Administrative Law Judge Hastings Morse, who considered the case *de novo*. On January 10, 1984 the Administrative Law Judge ("ALJ") found that Tamborra was not under a disability, and the Appeals Council affirmed that determination. Tamborra subsequently commenced this action to review the final decision of the Secretary.

**The Record Below**

Tamborra was born on June 14, 1938, and at the time of the hearing was forty-six years of age. He attended high school through the tenth grade and has a high school equivalency diploma. His relevant work background consists of employment for sixteen years as a corrections officer for the Westchester County Department of Correction. Tamborra last worked in January, 1983.

Tamborra was hospitalized at Arden Hill Hospital from February 8, 1983 to February 18, 1983. He complained of low back pain which radiated to his left lower extremity. A CAT scan revealed a bulging disc. On admission, he was examined by Dr. Michael Kamalian ("Dr. Kamalian"). Dr. Kamalian reported that a physical examination revealed paraspinal muscle spasm with pain radiating down the left lower extremity and diagnosed Tamborra's condition as herniated nucleus pulposus. Following ten days of traction and physical therapy, Tamborra was discharged. He was prescribed pain medication and instructed to perform back exercises.

In a follow-up report dated May 31, 1983, Dr. Kamalian diagnosed Tamborra as having a low back disorder with nerve root irritation secondary to a herniated disc. Dr. Kamalian reported pertinent physical findings including a tilt to the left, severe paraspinal muscle spasms, positive straight leg raising at 40 degrees bilaterally, and restricted range of motion. He did not note any atrophy. He stated that on May 17, 1983, he advised Tamborra to undergo surgery for the herniated disc.

On July 17, 1983 Tamborra underwent a consultive examination by Dr. Martin Altchek ("Dr. Altchek"), an orthopedist. In a report dated August 1, 1983, Dr. Altchek reported that Tamborra complained of low back pain which radiated down the left leg to below the knee but predominantly on the outer aspect of the leg. Tamborra related that he underwent physical therapy, traction and had a positive CAT scan. Dr. Altchek reported that Tamborra walked with a cane and would not bend his spine

more than five degrees. Tamborra would not heel or toe walk or kneel on a low stool, claiming that he was unable to do these maneuvers. Dr. Altchek reported that Tamborra was able to perform straight leg raising in the sitting position but complained of left buttock pain. He reported that Tamborra's hamstrings were tight and were seven degrees short of full extension. Straight leg raising in the supine position elicited complaints of pain at twenty to thirty degrees but the pain was lessened after knee flexion. Tamborra complained of marked tenderness to light touch over the left posterior superior iliac spine and lumber spine. Dr. Altchek interpreted lumbosacral spine x-rays taken in his office as being within normal limits. Dr. Altchek concluded that while Tamborra might have some degree of nerve root compression, there were no objective findings to substantiate Tamborra's claim of severe pain and that he had no more than a mild impairment which would not prevent him from engaging in most normal activities.

On May 18, 1983 a claims representative for SSA completed a personal interview of Tamborra. The claims representative noted that there was observed difficulty in walking and sitting. It was reported that Tamborra "got up from his chair by bracing himself against the desk, let out a gasp of pain, shifted position in his chair as if in pain. Walked slowly with a limp."

On August 24, 1983 a claims representative for SSA completed a subsequent personal interview of Tamborra. The claims representative reported observing difficulties in his ability to walk and to sit. It was noted that he leaned heavily on a cane and walked slowly. He was observed having difficulty "getting up from sitting" and the representative had to pick up something which Tamborra dropped. The representative stated that Tamborra "seemed to be sincere in his allegation of discomfort. It was obvious from facial expression that he was in pain."

In a letter to Tamborra's attorney dated October 20, 1983, Dr. Kamalian reported that he has been treating Tamborra since September 1976. He reported that Tamborra has been treated conservatively with a back brace and hospitalization with traction and bedrest. Dr. Kamalian reported that Tamborra re-injured his back in January 1983 and has been disabled as of that date. Dr. Kamalian opined that Tamborra was unable to resume any type of strenuous activity at that time or in the future.

In conjunction with his letter, Dr. Kamalian also completed a physical capacities evaluation. He stated that Tamborra could sit for three hours at a time and walk or stand for one hour each. He also stated that during an eight hour work day, Tamborra could sit, stand and walk for one hour each. He also reported that Tamborra could not lift or carry any significant weight but could use his upper extremities for most repetitive actions. Dr. Kamalian assessed that Tamborra could occasionally bend and squat, and could never climb, crawl or reach. He also reported that Tamborra was moderately restricted in activities involving unprotected heights.

At the hearing, Tamborra testified that he was unable to perform a sedentary job because sitting or standing too long causes sharp pain which radiates down his leg. To alleviate the pain, he has to lay flat in bed for two to three hours per day. Due to this limitation and the pain, he testified that he could not work an eight hour day. He also testified that he has to wear a back brace and take pain medication. Tamborra testified that he is able to sit for one hour at a time, stand for fifteen minutes at the most and walk three or four blocks before he gets sharp pain in his left leg. He indicated that he sees Dr. Kamalian every third week. He testified that although Dr. Kamalian had recommended surgery at one time, conservative therapy had worked in the past, and that surgery was being postponed for a while. He testified that he would have surgery if the current treatment failed to improve his condition.

In regard to questions about his daily activities, Tamborra testified he spends most days at his house watching television or lying down when his back hurts. He

testified that he occasionally visits neighbors and attends church. Although he has an automobile, he testified that he only drives short distances. He testified that he moved his bedroom to the ground floor because climbing stairs increased his pain.

Prior to the hearing, Tamborra submitted a statement objecting to the consultative examination performed by Dr. Altchek. He reported that the examination lasted no more than five minutes and that Dr. Altchek refused to listen to his statements. He reported that Dr. Altchek had to assist him in removing his shoes and pants. Tamborra opined that Dr. Altchek had already formed his opinion prior to the examination. Tamborra's attorney also objected to the consultative examination at the hearing and noted that Dr. Altchek's assessment was totally inconsistent with the objective evidence of record.

On the basis of the above evidence, the ALJ concluded that since January 1, 1983 Tamborra has had a severe back impairment that does not meet or equal the level of severity of any impairment contained in Appendix 1, Subpart P, of Social Security Regulations No. 4, but that has prevented him from engaging in his past relevant work. He further found that Tamborra was capable of performing sedentary work activity. Applying Rule 201.21 of Appendix 2, Subpart P, of the Regulations, he found that Tamborra was not disabled.

Tamborra now claims that there was not substantial evidence to support the ALJ's decision. He contends that the ALJ gave insufficient weight to the testimony of Dr. Kamalian, his treating physician and that he failed to properly evaluate Tamborra's subjective complaints of pain and the reports of the SSA claim representatives.

**The Applicable Standard**

■  In reviewing a denial of Social Security disability benefits, a court's function is to determine whether the Secretary applied proper legal principles in reaching a decision and whether that decision is supported by substantial evidence on the record as a whole. *Donato v. Secretary of Health and Human Services*, 721 F.2d 414, 418 (2d Cir.1983); *Spicer v. Califano*, 461 F.Supp. 40, 45 (N.D.N.Y.1978); 42 U.S.C. § 405(g). Substantial evidence in this context has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Donato v. Secretary of Health and Human Services, supra*, 721 F.2d at 418. The reviewing court is not to decide the case *de novo*, and where supported by substantial evidence the Secretary's findings of fact, as well as the inferences and conclusions to be drawn from those findings, are conclusive even where the reviewing court's independent analysis of the evidence may differ from the Secretary's analysis. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982). As the trier of fact, it is the function of the Secretary, and not the court, to resolve conflicts in the evidence and to pass on the credibility of witnesses. *Richardson v. Perales, supra*, 402 U.S. at 399, 91 S.Ct. at 1426; *McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 705 (2d Cir.1980).

For purposes of the Social Security Act, disability is defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.1982), the Second Circuit set forth a five-step sequence to be utilized in evaluating disability claims:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

■ In assessing an individual's disability, the Secretary must consider: (1) the objective medical facts, (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience. *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 41 n. 2 (2d Cir.1972); *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir. 1983). These elements of proof must be considered in combination with each other. *Bastien v. Califano,* 572 F.2d 908, 916 (2d Cir.1978).

Because I find that the ALJ failed to give appropriate weight to the medical opinions of the two examining physicians, the case must be remanded for reconsideration.

The Second Circuit has repeatedly emphasized that a treating physician's opinion is entitled to particular weight and is binding on the Secretary when it is not contradicted by substantial evidence. *See, e.g., Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983); *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 64 (2d Cir.1980). The Second Circuit rule requires that "special weight ... be given to medical reports submitted by an applicant's attending physician" even if there is contradictory medical evidence supplied by the agency-appointed physician. *Chiappa v. Secretary of HEW,* 497 F.Supp. 356, 360 (S.D.N.Y.1980).

In the case at hand, the only medical evidence on the record was presented by Tamborra's treating physician, Dr. Kamalian, and Dr. Altchek, a consulting physician. Dr. Kamalian, who had treated Tamborra for seven years, submitted a written report in which he found Tamborra to be "disabled" and "unable to resume any type of strenuous activity." He also completed a statement of residual functional capacity that indicated that Tamborra could not perform sedentary work. The ALJ chose to reject this statement, however, because of the inconsistency between Dr. Kamalian's initial statement that Tamborra could sit for three hours at one time and his subsequent statement that in a total eight hour work day he could sit for only one hour. The ALJ also relied on the fact that Dr. Kamalian's written report only prohibited strenuous activity and did not preclude a sedentary occupation. The only other medical evidence presented was Dr. Altchek's report in which he stated that Tamborra was only mildly impaired. The ALJ did not expressly discuss Dr. Altchek's report but stated that contrary to the claims of Tamborra's attorney, Dr. Altchek's findings were not inconsistent with other evidence of record in that x-rays of the lumbroscal spine when taken in the hospital in February 1983 were also normal and that both doctors reported no evidence of neurological deficits. Based on this medical evidence, the ALJ found that Tamborra was capable of performing sedentary work.

While Dr. Kamalian's written report did not expressly state that Tamborra was incapable of performing sedentary work, his residual functional capacity evaluation makes clear his assessment that Tamborra could not engage in such activity. This opinion was entitled to great weight, and the ALJ must provide clear and convincing reasons for rejecting this report. *Rhodes v. Schweiker,* 660 F.2d 722, 723 (9th Cir.1981). The ALJ rejected Dr. Kamalian's evaluation because of an inconsistency which on examination appears to have been caused by the doctor placing his "eight hour day" evaluation of Tamborra's capabilities in the "at one time" space and vice versa. While this inconsistency might be a sufficient basis for rejecting Dr. Kamalian's specific assessment as to Tamborra's ability to sit, stand and walk, it is not a convincing basis for rejecting the rest of the assessment. Dr. Kamalian found that Tamborra was unable to do any lifting of any sort, a finding inconsistent with the requirements for sedentary work. *See* § 404.1567(a) of the Regulations ("Sedentary work involves lifting no more than 10 pounds at a time"). On remand, the ALJ should give appropriate weight to Dr. Kamalian's findings and specifically consider those findings in the light of the other medical and subjective evidence.

Furthermore, although the ALJ specifically dealt with Tamborra's attorney's claims that Dr. Altchek's findings were inconsistent with other medical evidence, the ALJ did not address Tamborra's assertions that Dr. Altchek's report was insufficient because it was based on only a five minute examination and because Dr. Altchek did report the difficulties Tamborra had in dressing himself. Given that Dr. Kamalian's report must stand unless contradicted by substantial evidence, on remand the ALJ should carefully consider these allegations in order to determine if they affect the weight to be given Dr. Altchek's report.

In his motion papers, Tamborra also contends that the ALJ gave insufficient weight to his subjective evidence of pain. It is well established that "subjective pain may serve as the basis for establishing disability, even if such pain in unaccompanied by positive clinical findings or other 'objective' medical evidence." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979) (emphasis and citations omitted); *Aubeuf v. Schweiker,* 649 F.2d 107 (2d Cir.1981). It is within the discretion of the ALJ to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of pain felt by the claimant. *Marcus v. Califano, supra,* 615 F.2d at 28; *Bolton v. Secretary of Health and Human Services,* 504 F.Supp. 288, 291 (E.D.N.Y.1980). However, a claimant's subjective evidence of pain may not be disregarded solely because there is no objective evidence supporting his complaints. Furthermore, where medical evidence establishes a physical basis for the claimants' subjective complaints, the ALJ's right to make a credibility determination cannot of itself insulate his decision for review. *See Ghazibayat v. Schweiker,* 554 F.Supp. 1005, 1010–1011 (S.D.N.Y.1983).

In his decision, the ALJ stated that he was rejecting Tamborra's testimony as to the nature and extent of his symptoms and limitations because Tamborra had declined recommended surgery despite his allegations of severe pain and because "his own estimation of his incapacitation is not supported by objective clinical signs and laboratory findings." The ALJ was entitled to evaluate the credibility of Tamborra's testimony, and the fact that Tamborra had decided against surgery was one factor that he could take into consideration. While Tamborra testified that Dr. Kamilian had not strongly recommended surgery since 1976, he was putting off surgery after consulting with the doctor and because of past success with conservative treatment, the ALJ could properly have chosen not to credit that testimony, especially in light of Dr. Kamalian's notation that surgery was recommended in May of 1983. The ALJ was also entitled to consider medical findings in making his determination as to credibility. While he could not have rejected Tamborra's claims solely be-

cause of a lack of objective evidence, the record reflects that the ALJ based his decision on his independent appraisal of Tamborra's credibility.

On remand, however, the ALJ should give appropriate consideration to the testimony of the two claims representatives for the SSA who both reported their observations and impressions of Tamborra's symptoms and pain. The ALJ was required to consider all of Tamborra's testimony and to independently evaluate its credibility. There is no evidence that the ALJ considered this testimony in evaluating Tamborra's credibility. While the subjective testimony of Tamborra and others as to his symptoms need not be conclusive, on remand the ALJ must give such testimony appropriate evaluation.

For the reasons discussed above, the decision of the Secretary is reversed and the case is remanded for further consideration in accordance with this opinion. The case is closed with leave to reopen *ab initio*, on the specific understanding that the court retains jurisdiction, on motion and without the payment of filing fees, to enter all necessary orders or conduct any necessary future proceedings in the case, as if it had not been closed.

IT IS SO ORDERED.